# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

STEVE OSBORN,

                                        Plaintiff,

            v.                                                      9:20-CV-673
                                                                    (TJM/ATB)
DEBORAH HARRIS, et al.,

                                        Defendants.

STEVE OSBORN, Plaintiff pro se
DAVID H. WALSH, IV, ESQ. for defendant Deborah Harris

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

Defendant Harris's summary judgment motion (Dkt. No. 46), has been referred to

me for Report-Recommendation by Hon. Thomas J. McAvoy, Senior United States

District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).  Plaintiff has

not responded to the summary judgment motion during the six months since it was

filed.[1]

After Judge McAvoy's initial review of plaintiff's complaint and a motion to

dismiss filed by several defendants (Dkt. Nos. 10, 35, 36), the only remaining claim

pending in this action is a First Amendment retaliation claim against defendant Harris,[2]

a corrections Lieutenant at Oneida County Correctional Facility ("OCCF"), where

---

[1] It appears from the docket that plaintiff may have left his last-known residence in early 2022, and he has not provided updated contact information to the court.  (*See* Dkt. Nos. 43, 44, 45, 47, 49). As a result, plaintiff may not have received the summary judgment motion.

[2] Plaintiff originally sued several other defendants, including some designated as "John Does." (Compl. *generally*, Dkt. No. 1).  Although some of plaintiff's original claims were dismissed without prejudice to amendment, he never sought leave to amend.

plaintiff was confined between April and June of 2020.  Defendant Harris contends that plaintiff failed to exhaust his administrative remedies, by failing to file a grievance relating to the retaliation claim.  She also argues that the retaliation claim should be dismissed on the merits.  In his complaint (Dkt. No. 1), and during his deposition (Dkt. No. 46-2), plaintiff asserted that defendant Harris, the Grievance Coordinator at OCCF, retaliated against him for complaining about the violation of his religious rights by destroying or failing to process grievances he submitted, and by motivating others officers to initiate disciplinary action against him.  Lt. Harris denies these allegations in an affidavit submitted in support of the summary judgment motion. (Harris Aff., Dkt. No. 46-17), to which plaintiff did not respond.

## I.    Relevant Factual Allegations

### A.    Plaintiff's Allegations

#### 1.    Plaintiff's Complaint

Plaintiff alleges that on April 30, 2020, he submitted a "complaint form," objecting to the way that Ramadan[3] food was being handled at OCCF.[4] (Compl. at 7). Plaintiff claims that on May 4, 2020, defendant Harris "sent" him his complaint and told plaintiff that he could either "agree" or "disagree" with her "response."  Plaintiff

---

[3] Ramadan is the ninth month of the Islamic year, observed as sacred with fasting from dawn to sunset.  https://www.merriam-webster.com/dictionary/Ramadan.

[4] Plaintiff objected to the religious meals being handled by non-Muslims and explained in his "complaint form" that New York State facilities show Ramadan a great deal of respect, while OCCF was not following the proper law. (Compl. at 7).

alleges that he "disagreed," and that he put the complaint form back on "Dep. Blue's"[5] desk. (*Id.*)  Deputy Blue allegedly brought the complaint back to defendant Harris, as is the proper "procedure." (*Id.*)

Plaintiff states that on May 3 and 4, 2020, his Ramadan breakfast meals were brought to him by the now-dismissed John Doe defendants after daybreak, so that plaintiff could not eat them. (Compl. at 7).  On May 5, 2020, former defendant Conklin brought plaintiff's Ramadan breakfast too late for him to be able to eat it.  Plaintiff states that he wrote another "complaint" about the May 5th incident, which he sent to defendant Harris. (Compl. at 7).  Plaintiff states that defendant Harris came to see him after he wrote the complaint on May 5th, and argued with him about the appropriate time for his breakfast to be brought by the guards.  When plaintiff challenged her opinion about the appropriate time, Lt. Harris allegedly slammed his complaint form on the desk, told plaintiff to sign it and get it back to her, and left the unit. (*Id.*)

Plaintiff alleges that on May 6, 2020, his Ramadan breakfast was delivered by former defendant Devins, but it was again too late for plaintiff to eat it. (Compl. at 8).  When plaintiff asked why the meal was late, Devins made some disparaging remarks and walked away.  Later that morning, defendant Harris came to speak with plaintiff about his May 5th [6] complaint. (Compl. at 8).  When plaintiff told Lt. Harris that his

---

[5] "Blue" is not this deputy's name, and he or she is not a defendant in this case.  Plaintiff used pseudonyms for several officers who purportedly support plaintiff's claims, to protect them from possible retaliation by their co-workers. (Compl. at 7-9).

[6] The plaintiff's federal complaint states that defendant Harris brought him his "May 4th complaint," but it is clear from the previous page that he wrote a complaint form on May 5th after his breakfast was late for the third time. (Compl. at 7).

breakfast had again been brought too late on May 6th, she attempted to change the subject by asking plaintiff why he gave away his dinner the night before. (*Id.*) Plaintiff attempted to explain the situation,[7] but defendant Harris told plaintiff that she did not "give a damn," and started walking away. (*Id.*) As defendant Harris was walking away, she turned and told plaintiff that his April 30th complaint had "disappeared," and that she could not find it. (Compl. at 8). Defendant Harris then allegedly smiled and left the unit. (*Id.*)

Plaintiff claims that Dep. Blue, "a good and respectful officer," told plaintiff that he "personally" put the complaint form in defendant Harris's mailbox. Later on May 6, 2020, another officer, who plaintiff refers to as "Dep. Good Guy," told plaintiff that defendant Harris said that plaintiff was making her sick and threw his complaint in the trash. (Compl. at 8-9). Another officer, who plaintiff calls "Dep. Friend," told plaintiff that former defendant Carollo "put the word out" that defendant Harris wanted plaintiff "silenced." (*Id*. at 9). This involved "writing up" plaintiff for "everything." (*Id*.)

During lunch on May 18, 2020, another inmate gave plaintiff a piece of cake, but plaintiff could not eat it because he was fasting, and he wrapped it up to save for later. (Compl. at 13). Former defendant Mosher apparently witnessed the exchange and gave plaintiff a misbehavior report, charging him with "trading possessions." (*Id.*)

## 2. Plaintiff's Deposition

During his deposition in September 2021, which was conducted after defendants

---

[7] Plaintiff claims to have a medical problem, which renders him unable to eat spicy food. He states that he was brought a dinner tray which contained food that he could not eat, so he gave the food to another inmate and was given a misbehavior report for doing so, by officers other than Lt. Harris. (Compl. at 7-8).

argued in their motion to dismiss that plaintiff failed to exhaust his administrative

remedies with respect to several claims,[8] plaintiff became more expansive about

defendant Harris's purported interference with plaintiff's efforts to pursue grievances at

OCCF and her involvement in other alleged adverse actions against him.  To support

his position, plaintiff relied, to an even greater extent than in his complaint, on alleged

hearsay statements of jail deputies, and plaintiff persisted in refusing to identify these

individuals by name.  (Pl.'s Dep. at 13, 16-17, 21-23, 31-32, 35).

Plaintiff testified that he had been incarcerated at OCCF approximately 15 times

and was familiar with the facility's grievance procedures.  (*Id*. at 6, 9-10).  He stated

that he believed that he filed "at least six" grievances at OCCF during the relevant

period between December 2019 and June 2020 and elaborated on the content of four

complaints that he recalled filing on April 30th, May 3rd, May 5th, and May 6th, 2020.

(*Id*. at 10-12, 26).  Plaintiff ultimately claimed: "I would say that at least ninety-five

percent of the grievances that go to [Lt. Harris] do not get followed up on."  (*Id*. at 33).

Plaintiff testified that when he did not receive responses to his April 30th

grievance, he complained in writing about that to Capt. Liza Zurich, presumably of

---

[8] In my Report-Recommendation relating to this motion to dismiss, I stated:

This court must accept plaintiff's allegations as true in the context of a motion to dismiss. Without a statement from defendant Harris or any other further support, this court cannot reject the plaintiff's allegations. Therefore, at this time, the court will not recommend dismissal of any of plaintiff's claims based on failure to exhaust.  If adopted, this recommendation would not prevent the defendants from making a better-supported argument in a motion for summary judgment.

*Osborn v. Harris*, No. 9:20-CV-673 (TJM/ATB), 2021 WL 1131413, at *8 (N.D.N.Y. Jan. 15, 2021), report and recommendation adopted, 2021 WL 1124575 (N.D.N.Y. Mar. 24, 2021).

OCCF, and to the "CORC in Albany."[9]  (*Id.* at 13-15, 24-25, 27).  Plaintiff has not

produced copies of any of the grievances, complaints, or letters he purportedly

submitted, at OCCF or elsewhere, as to which he claimed to have received no

response.[10]

Plaintiff testified that he was claiming that Lt. Harris retaliated against him "for

the grievances related to being a Muslim" by interfering with his subsequent grievances

and by causing plaintiff to face disciplinary charges for sharing food with another

inmate, which resulted in his confinement to his cell for seven days.  (Pl.'s Dep. at 31,

33-34, 35-36).  As noted above, plaintiff alleges that Lt. Harris made several statements

to him, which he construes as tacit admissions that she had tampered with his

grievances.

The only corroboration plaintiff offers for these speculative allegations are

hearsay statements of officers, who plaintiff refuses to identify, some of whom

purportedly assured plaintiff that they delivered his complaints and grievances to Lt.

Harris.  (*Id.* at 13, 16-17, 31-32, 35-36).

Plaintiff's claim, during his deposition, that "Deputy Friend" assured plaintiff

---

[9] "CORC" is the acronym for the "Central Office Review Committee" of the New York Department of Corrections and Community Supervision ("DOCCS"), which handles grievance appeals from New York State correctional facilities, not county facilities.  *See, e.g., Williams v. Correction Officer Priatno*, 829 F.3d 118, 119-20 (2d Cir. 2016) (describing the role of CORC in the DOCCS grievance process).  As noted below, grievance appeals from county correctional facilities should be directed to the New York State Commission of Correction's Citizens Policy and Complaint Review Council ("CPCRC").  It is not clear whether plaintiff mistakenly referred to the wrong entity when he stated where he purportedly sent a complaint about the handling of his grievance at OCCF.

[10] Plaintiff claims he could not make copies of documents because he was not allowed to have carbon paper at OCCF.  (*Id.* at 24).  Plaintiff's complaint confirms that inmates could request to copy materials in the law library.  (Compl. at 14).

that he gave plaintiff's May 3rd grievance to Lt. Harris (*Id*. at 15-16) does not appear in the complaint. Plaintiff also testified that Deputy Friend told plaintiff that defendant Harris ripped up one of plaintiff's grievances (*Id*. at 32), while the complaint alleges that Deputy "Good Guy" made that statement (Compl. at 8-9).

Similar anonymous hearsay statements are the only corroboration for plaintiff's more recent claims that Lt. Harris was responsible for his punishment on disciplinary charges brought by other officers, for sharing food with other inmates, which plaintiff admits he did. (Pl.'s Dep. at 18-20, 21-23, 26, 28-29, 30). In his complaint, plaintiff stated that Deputy Friend told him that Lt. Harris wanted him "silenced." (Compl. at 9). During his deposition, plaintiff first testified that Officer Blue told him that Lt. Harris wanted him silenced (Pl.'s Dep. at 22-25), then stated that Deputy Friend told him that (*Id*. at 35), and finally, when confronted with the inconsistency in his testimony, corrected himself and again attributed the statement to Officer Blue (*id*.). Plaintiff testified that "Officer Blue" told him that Lt. Harris was involved in the initial disciplinary charge against him for sharing food (*Id*. at 21-23), an allegation that does not appear in plaintiff's complaint. Plaintiff acknowledged, during his deposition, that his complaint did not suggest that Lt. Harris had any involvement in a disciplinary charge brought against him by former defendants Mosher and another officer, but he now "believe[d]" the defendant Harris was involved in bringing that charge. (*Id*. at 30-31).

Tellingly, in his complaint and during his deposition, plaintiff never alleges that he filed or attempted to file a grievance relating to defendant Harris's alleged retaliation

against him.  Nor does plaintiff assert that he was prevented by Lt. Harris from filing such a grievance.  To the contrary, plaintiff's actions indicate that he was not deterred in pursuing a number of complaints and grievances during the relevant time period, despite defendant Harris's alleged efforts to interfere.

### B.    Defendant's Statement of Material Fact and Supporting Evidence

The defense Statement of Undisputed Material Fact ("SOMF") (Dkt. No. 46-19) relies on an affidavit of Deborah Harris (Dkt. No. 46-17) and supporting documentation relating to a series of grievances from plaintiff that defendant Harris handled (Exhibits D-O, Dkt. Nos. 46-5 - 46-16).  As noted above, plaintiff, likely because of his prolonged failure to update the court regarding his contact information, failed to respond to the SOMF, or the summary judgment motion, in general.

In her sworn affidavit, Lt. Harris categorically denied that "she ever took any adverse action against Plaintiff in response to any complaints or grievances he filed." (Harris Aff., ¶ 9, Dkt. No. 46-17).  With respect to the disciplinary charges initiated by other officers, for which plaintiff claims that Lt. Harris was responsible, she denies having any input on plaintiff's punishment for violating jail rules or any role in his disciplinary hearing.  (*Id.*, ¶ 10).  She categorically denied "ripping up or throwing away any of Plaintiff's complaints or grievances, or that I wanted Plaintiff 'silenced[,]'" as plaintiff claims, based on the alleged hearsay statements of officers that he refused to name.  (*Id.*, ¶ 11).  Lt. Harris contends that substantial documentation relating to a number of plaintiff's complaints and grievances submitted during the relevant time period (discussed further below) establishes her efforts to address plaintiff's claims and

to facilitate appeals when he declined to accept her proposed resolutions of his complaints. (*Id.*, ¶¶ 7, 12; Exs. D-O). Finally, Lt. Harris categorically denies that she "ever received any complaints or grievances regarding any First Amendment retaliation claim Plaintiff sought to pursue against me." (*Id.*, ¶ 8).

## II.   **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining

whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

"Even a pro se plaintiff . . . cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint."[11] *Saldana v. Loc. 32B-32J Serv. Emps. Int'l Union*, No. 03 CIV.1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005) (citing *Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996)). "Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts." *Id.* (citing Fed. R. Civ. P. 56(e); *Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y. 1999) (pro se plaintiffs must make proper evidentiary showing in order to defeat summary judgment). Evidence may be objectionable and inadmissible in connection with a summary judgment motion because, *e.g.,* it lacks foundation, is not based on personal knowledge of the source of the information, is irrelevant, or constitutes hearsay. *See Payne v. Cornell Univ.*, No. 18-CV-1442 (GTS/ML), 2021 WL 39684, at *14 (N.D.N.Y. Jan. 5, 2021), *aff'd*, No. 21-109-CV, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022) (Statements which "contain[] hearsay, conclusory assertions not based on personal knowledge, and statements contradicted by [plaintiff's] own previous deposition testimony" may be disregarded, in the discretion

---

[11] "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding pro se. In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit." *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 209-10 (N.D.N.Y. 2008)

of the judge reviewing a summary judgment motion).

While courts are required to give due deference to a plaintiff's pro se status, that status "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). Generally, failure to respond to a motion for summary judgment results in summary judgment for the moving party, "once the court assures itself that Rule 56's other requirements have been met." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009)); *see also* N.D.N.Y. Local Rule 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion[.]").

 "When the opposing party fails to respond to the moving party's Rule 56.1 Statement, the material facts contained in the moving party's statement are deemed admitted as a matter of law." *Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S.*, No. 13-CV-0835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15, 2014); *see also Genova v. County of Nassau*, 851 F. App'x 241, 244 (2d Cir. 2021)).  However, "a district court must ensure that there is support in the record for facts contained in unopposed Rule 56.1 statements before accepting those facts as true." *United States v. Abady*, No. 03-CV-1683, 2004 WL 444081, at *3 (S.D.N.Y. Mar. 11, 2004) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140–43 (2d Cir. 2003)).  Moreover, a pro se plaintiff must be notified of the consequences of failing to respond to the motion. *Champion v.*

*Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  In this case, plaintiff was sent a specific

warning by the court of the consequences of a failure to respond.  (Dkt. No. 47).[12]

## III.  **Exhaustion of Administrative Remedies**

### A.    **Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an

inmate to exhaust all available administrative remedies prior to bringing a federal civil

rights action.  The exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and regardless of the

subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004)

(citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Inmates must exhaust their

administrative remedies even if they are seeking only money damages that are not

available in prison administrative proceedings.  *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the

defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d

691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to

establish that plaintiff failed to meet the exhaustion requirements.  *See, e.g., Key v.*

*Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

---

[12] Because plaintiff failed to advise the court of his updated contact information, this notice was returned undelivered.  (Dkt. No. 49).  Notwithstanding the leniency with which pro se plaintiffs are treated, a plaintiff has the duty to inform the court of any address changes. "The demand that plaintiffs provide contact information ***is no esoteric rule of civil procedure, but rather the obvious minimal requirement for pursuing a lawsuit***." *Allen v. Moreland*, No. 6:16-CV-6539, 2018 WL 3637467, at \*1 (W.D.N.Y. July 30, 2018) (emphasis added) (quoting *Dumpson v. Goard*, No. 00-CV-6039, 2004 WL 1638183, at \*3 (W.D.N.Y. July 22, 2004)).  Additionally, N.D.N.Y. Local Rule 41.2(b) states that failure to notify the court of a change of address in accordance with Local Rule 10.1(b) may result in the dismissal of any pending action.

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

Grievance programs and procedures in ***county*** facilities are contained in the regulations governing the New York State Commission of Correction ("NYSCOC"), appearing in the chapter entitled "Minimum Standards and Regulations for Management of County Jails and Penitentiaries," in the part specifically entitled "Grievance Program." N.Y. Code Rules & Regs. tit.9, §§ 7032.1-7032.11. These regulations specifically provide that the chief administrative officer of the correctional facility shall establish and maintain a formal inmate grievance procedure. *Id.* § 7032.1. The regulations provide that the facility shall maintain grievance forms for the inmates to use and shall make those forms readily available to inmates. *Id.* §§ 7032.4(d), 7032.6. The regulations also provide that instructions for filing a grievance shall be included in the facility rules and regulations as required by section 7002.9(a)(15), and that "[e]ach inmate at any facility shall be advised in writing as to the availability of grievance forms upon admission." *Id.* § 7032.4(b), (c).

An inmate must file his grievance within five days of the date of the conduct giving rise to the complaint. *Id.* § 7032.4(d). The chief administrative officer of the

facility designates a staff member to act as a grievance coordinator, and the regulations provide that each grievance shall be fully investigated by an individual who was not personally involved in the circumstances giving rise to the grievance. *Id.* § 7032.4(e), (f). The regulations specify minimum requirements for the type of information that must be gathered during the investigation of the inmate's grievance. *Id.* § 7032.4 (g)(1)-(g)(4).

The grievance coordinator must issue a written decision within five business days, containing the "facts and reasons underlying the coordinator's determination," and a copy of the determination must be provided to the inmate. *Id.* at 7032.4(i). The plaintiff may appeal an adverse determination to the chief administrative officer or his designee within two business days of receiving the adverse determination. *Id.* § 7032.4 (j). The chief administrative officer renders a decision within five business days, and if the inmate is still not satisfied, he may appeal the adverse decision directly to the Commission of Correction within three business days. *Id.* §§ 7032.4(k), 7032.5.

Within three business days after receiving the appeal from the inmate, the chief administrative officer of the facility must mail the appeal to the Commission's Citizens Policy and Complaint Review Council ("CPCRC"), and the grievance coordinator must provide the inmate with a receipt of mailing. *Id.* § 7032.5(c). The CPCRC has forty-five days within which to issue a written decision. *Id.* § 7032.5(d). In certain circumstances, inmates will be provided assistance at any stage of the proceedings. *Id.* § 7032.9. The chief administrative officer of the facility must keep a centralized record of all grievances, and facility employees are given an orientation on the grievance

procedures.[13]  *Id.* §§ 7032.10, 7032.11.

In the past, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).  The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances."  *Ross v. Blake*, 578 U.S. 632, 639-40, 136 S. Ct. 1850, 1857 (2016).  "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 639, 136 S. Ct. at 1857).

Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid.  The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability.  *Ross*, 578

---

[13] The regulations also provide that if an inmate is released or transferred to another facility prior to the resolution of a grievance, the chief administrative officer "shall cause a determination to be made on such grievance . . .", and if the grievance is denied, the chief administrative officer "shall submit the grievance to the [CPCRC] as set forth in section 7032.5 of this Part."  9 N.Y.C.R.R. § 7032.7.

15

U.S. at 642, 136 S. Ct. at 1858.  Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles*, 2016 WL 4572321 at *2.  Defendants bear the burden of proving that administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Williams v. Priatno*, 829 F.3d 118, 122, 126 n.6 (2d Cir. 2016).

An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Id.* (quoting *Ross*, 578 U.S. at 643-44, 136 S. Ct. at 1859-60).  In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, 578 U.S. at 643-44, 136 S. Ct. at 1859-60.  The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief.  *Id.,* 578 U.S. at 643, 136 S. Ct. at 1859.  The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it."  *Id.,* 578 U.S. at 643-44, 136 S. Ct. at 1859-60.  Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure.  *Id.,* 578 U.S. at 644, 136 S. Ct. at 1860.

16

**B.    Analysis**

Plaintiff has not asserted that he attempted to file a grievance relating to Lt. Harris's alleged First Amendment retaliation against him and has not refuted her statement that, in her capacity as the Grievance Coordinator at OCCF, she never received any complaints or grievances relating to such a retaliation claim. Hence, the court concludes that there is no material issue of fact regarding plaintiff's failure to even start the grievance process with respect to the surviving claim against Lt. Harris.

However, as noted above, in his sworn complaint and during his deposition, plaintiff alleged that Lt. Harris lost or destroyed one of his grievances and failed to properly process many others. Hence, the court will assess whether, based on the admissible evidence of record, there is a material issue of fact as to whether the grievance process at OCCF was "available" to plaintiff during the time period that he could have filed a grievance against Lt. Harris.

The court would first note that the plaintiff acknowledged his familiarity with the grievance procedures at OCCF during his deposition. (Pl.'s Dep. at 6, 9-10). Further, the record in this case makes clear that plaintiff was not deterred from continuing to submit grievances, notwithstanding his allegations that Lt. Harris or others were interfering with his efforts to pursue the grievance process.

The court finds that the alleged hearsay statements of several officers regarding Lt. Harris's alleged interference with plaintiff's efforts to pursue grievances, lack foundation and do not qualify as admissible evidence in opposition to the summary judgment motion. *See Payne v. Cornell Univ.*, 2022 WL 453441, at *2. As discussed

above, plaintiff repeatedly refused to name these officers, and his complaint and
deposition testimony regarding which officer said what are inconsistent.

If the court were to conduct an independent review of the evidence of record
despite plaintiff's failure to respond to the summary judgment motion, the admissible
evidence that the grievance process was unavailable to plaintiff would be limited to his
uncorroborated claims (1) that he filed a number of complaints and grievances that Lt.
Harris, as Grievance Coordinator, should have followed up on, rendering her
responsible for the fact that he did not receive appropriate responses; and (2) that Lt.
Harris made a number of ambiguous statements, which plaintiff construed as implicit
admissions that she interfered with his efforts to pursue grievances. Again, defendant
Harris has directly denied all of this in a sworn affidavit, to which plaintiff has not
responded.

The affidavit of defendant Harris and the supporting documentation of her
involvement in the handling of a number of grievances submitted by plaintiff at OCCF
during the relevant time period strongly contradict the plaintiff's claims that the vast
majority of his complaints and grievances were ignored or disposed of by Lt. Harris.
Defendant Harris documents that a complaint and grievance submitted by plaintiff with
respect to commissary items in January 2020 were investigated, reviewed and
addressed by Lt. Harris, and were then reviewed and denied on appeal to the Chief
Administrative Officer. Plaintiff accepted this resolution by signing Part II of the
grievance form on January 20th. (Harris Aff., ¶ 7a & Exs. D-G, Dkt. Nos. 46-5 - 46-8).

On April 23, 2020, plaintiff submitted a lengthy complaint form, a prior version

of which he claimed was destroyed by another deputy, regarding issues with meals served by OCCF during Ramadan, including concerns about non-Muslims cooking and handling the food. (Harris Aff., ¶ 7b; Ex. H, Dkt. No. 46-9). Lt. Harris states that she completed a Grievance Investigation Form, explaining that the OCCF was following Muslim guidelines approved by an Imam and NYSCOC, and finding no violation of plaintiff's religious rights. (Harris Aff., ¶ 7b; Ex. I, Dkt. No. 46-10). When plaintiff did not return the form to Lt. Harris with any objections, she noted that on the grievance form and deemed the grievance closed. (*Id*.)

The subject matter of this April 23rd complaint was very similar to that described by plaintiff regarding a grievance he claimed to have submitted on April 30th. (Pl.'s Dep. at 11 (April 30th grievance was about "[r]eligious reasons why Muslims are not allowed to handle Ramadan food")). Plaintiff claims that he handed the April 30th grievance to "Deputy Blue," that he was advised by Blue that he delivered the grievance to Lt. Harris–anonymous hearsay, which is not admissible in connection with this summary judgment motion–and that plaintiff never received a response to the grievance. (Pl.'s Dep. at 13-14). Plaintiff also makes the uncorroborated assertion that Lt. Harris told him that his April 30th complaint had "disappeared," and that she could not find it. (Compl. at 8).[14] However, if defendant Harris had intentionally lost

---

[14] During his deposition, plaintiff did not mention this alleged statement of Lt. Harris during his extended explanation of what happened to his April 30th grievance, but instead relied on the hearsay statements of other officers he refused to identify. (Pl.'s Dep. at 13-16). In *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), the Second Circuit held that summary judgment may be granted in the rare case, "where there is nothing in the record to support the plaintiff's allegations, aside from his own contradictory and incomplete testimony, and even after drawing all inferences in the light most favorable to the plaintiff, the court determines that 'no reasonable person' could credit . . . his testimony." *Quick v. Quinn*, No. 9:12-CV-1529 (DNH/DEP), 2014 WL 4627106, at *4 (N.D.N.Y.

plaintiff's April 30th grievance, it does not make sense that she would maintain and produce his preceding complaint, which was written about the same subject. Plaintiff complained that he wrote letters complaining about this grievance to CORC and Captain Lisa Zurich, but did not produce copies of those letters or the alleged grievance.

Defendant Harris also documents how plaintiff's complaint and grievances regarding the late delivery of his breakfast during Ramadan on May 3rd through 5th completed the entire grievance process. Lt. Harris investigated and denied the grievances for reasons stated in her affidavit; passed the grievances along to the Chief Administrative Officer at OCCF, who affirmed her decision; and then forwarded the paperwork to the CPCRC when plaintiff declined to accept the decision at OCCF on May 15, 2020. (Harris Aff., ¶¶ 7c, 7e, 7f; Exs. J-0, Dkt. Nos. 46-11 - 46-16). Plaintiff acknowledged receiving notice from Lt. Harris that she forwarded one of his grievances to Albany, but failed to hear any response for more than one year. (Pl.'s Dep. at 32-33). In fact, on July 16, 2020, CPCRC responded to OCCF, with a copy to plaintiff, advising that it had upheld OCCF's handling of plaintiff's grievance. (Harris Aff., ¶ 7f; Ex. O).[15]

---

Sept. 11, 2014) (quoting *Jeffreys*, 426 F.3d at 54-55). In order for the court to apply the Jeffreys exception, the defendant must satisfy each of the following: (1) "the plaintiff must rely 'almost exclusively on his own testimony,' "(2) the plaintiff's "testimony must be 'contradictory or incomplete,' " and (3) the plaintiff's testimony must be contradicted by evidence produced by the defense. *Id*. (quoting, inter alia, *Jeffreys*, 426 F.3d at 554)). The court concludes that, pursuant to *Jeffreys*, plaintiff's uncorroborated claim, in his complaint, of what he viewed as tacit admissions by Lt. Harris that she destroyed the April 30th grievance, is not sufficient to create a material issue of fact with respect to exhaustion.

[15] Plaintiff was transferred to DOCCS custody in June 2020, so may not have received his copy of CPCRC's letter.

Lt. Harris's review of OCCF's grievance records did not account for every grievance the plaintiff claimed to submit, some of which he could not recall during his deposition, but it certainly refuted plaintiff's claim that the vast majority of grievances at OCCF were not followed up on.  Without making findings with respect to plaintiff's credibility, it is possible that a few of his grievances fell though the cracks–for example, his alleged grievance regarding the "spicy burger" he allegedly complained about on May 5, 2020.  (Pl.'s Dep. at 11).  However, plaintiff has not claimed that he tried to file a grievance relating to his retaliation claim against defendant Harris, or that he was precluded from doing so by Lt. Harris or others.  Further, no reasonable finder of fact could conclude from the admissible evidence of record that the grievance program at OCCF was generally unavailable to plaintiff, who exploited the program regularly.  Accordingly, the court would recommend granting summary judgment in favor of defendant Harris based on plaintiff's failure to exhaust available administrative remedies with respect to his retaliation claim against her.

IV.    **Retaliation**

In the interest of making a full record, the court will also address the merits of plaintiff's retaliation claim against defendant Harris.

A.    **Legal Standards**

To state a First Amendment claim of retaliation, an inmate must allege facts plausibly suggesting that (1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected conduct and the adverse action. *Holland v. Goord*,

758 F.3d 215, 225 (2d Cir. 2014)(citations omitted).  The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration."  *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (quoting *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir. 2003)).  In other words, we must examine prisoners' claims of retaliation with "skepticism and particular care."  *Rivera v. Goord*, 119 F. Supp 2d 327, 339 (S.D.N.Y. 2000) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).  Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations," and not stated in "wholly conclusory terms."  *Dolan v. Connolly,* 794 F.3d 290, 295 (2d. Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 (2002)).

In order to satisfy the final prong, "the causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Cruz v. Grosso,* No. 9:13-CV-30 (FJS/TWD), 2014 WL 2176256, at *6 (N.D.N.Y. May 23, 2014) (citing *inter alia Colon,* 58 F.3d at 873).  Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, including temporal proximity between the protected activity and the alleged retaliatory act, and statements by the defendant concerning his or her motivation.[16] *Cruz,* 2014 WL 2176256, at *6 (citing *Colon*, 58 F.3d at 872-73).  However, temporal proximity alone is not enough to establish a causal connection.  The Second Circuit has held that where "timing is the only basis for a

---

[16] This court recognizes the existence of other factors, as discussed in *Colon,* applicable only when the alleged adverse action is the issuance of a misbehavior report.

22

claim of retaliation . . . an inference of retaliation does not arise." *Thomas v. Waugh,*
No. 9:13-CV-0321 (MAD/TWD), 2015 WL 5750945, at *15 (N.D.N.Y. Sept. 30, 2015)
(quoting *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001).

### B.    Analysis

Plaintiff alleges that defendant Harris interfered with his grievances and
motivated other officers to initiate disciplinary complaints against him in retaliation for
previous grievances relating to his religious practices. (Compl. at 7-9; Pl.'s Dep. at 31,
33-34, 35-36).  This court finds that plaintiff's claims about the various hearsay
statements from officers he refused to name are not admissible and may not be
considered in evaluating the summary judgment motion, including as it relates to the
merits of the retaliation claim.

Defendant concedes that plaintiff engaged in protected activity by submitting
complaints and grievances, but argues that no reasonable fact finder could conclude
that defendant Harris took adverse actions against plaintiff or that any of Lt. Harris's
actions directed at plaintiff were substantially motivated by an intent to retaliate for his
participation in protected conduct.  Based on Lt. Harris's documentation of how she
handled plaintiff's complaints and grievances during the relevant time period, the court
concludes that no reasonable jury could conclude, based on the admissible evidence of
record, that she interfered with plaintiff's efforts to pursue the grievance process or
harbored a retaliatory intent.  In his April 23rd complaint, plaintiff alleged that an officer
other than Lt. Harris had destroyed a prior version of plaintiff's complaint.  With
respect to other complaints or grievances as to which plaintiff claims he got no

23

response, he admittedly gave the documents to other officers, whose anonymized statements that they delivered the documents to Lt. Harris are not admissible. Hence plaintiff's claims that defendant Harris was personally responsible for complaints and grievances that were never processed is based on little more than speculation.

With respect to the disciplinary actions initiated by officers other than Lt. Harris, plaintiff's claims that she was responsible, in any way, has no significant evidentiary support once the inadmissible, alleged hearsay statements of officers plaintiff refused to name are excluded from consideration. As noted above, plaintiff's claims regarding Lt. Harris's alleged role in the disciplinary actions against him became much more expansive during his deposition.

In any event, "[r]egardless of the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). In this case, plaintiff acknowledges that he openly violated the rule against sharing food with other inmates, even if he claims he was not aware of the rule. (Pl.'s Dep. at 18-20, 28-30). Any reasonable fact finder would necessarily conclude, based on the admissible evidence, that the disciplinary actions against plaintiff would have been initiated by the other officers regardless of whether anyone harbored some retaliatory intent. Again, after the inadmissible anonymized statements are excluded from consideration, plaintiff's claim that his discipline was caused by Lt. Harris's retaliatory motivation is based on nothing

but dubious speculation.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant Harris's motion for summary judgment (Dkt. No. 46) be **GRANTED**, and that the sole remaining claim in this action against her be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: August 2, 2022

Andrew T. Baxter
U.S. Magistrate Judge